IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHYLER DRUMM, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No: 2:24-cv-438 |
| | ) | |
| v. | ) | |
| | ) | US Magistrate Judge Maureen P. Kelly |
| BEAVER AREA SCHOOL DISTRICT; | ) | |
| JEFFERY BELTZ; and NICHOLAS | ) | |
| COLLINS, | ) | **ELECTRONICALLY FILED** |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

### DEFENDANTS' BEAVER AREA SCHOOL DISTRICT AND JEFFREY BELTZ'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

#### SUMMARY OF PLAINTIFF'S COMPLAINT AND ARGUMENT

Plaintiff, Shyler Drumm, is a 21 year old individual who was previously enrolled in the Beaver Area School District. *See* Complaint, ¶¶1-2. Plaintiff was diagnosed with Generalized Anxiety Disorder and Attention Deficit Hyperactivity Disorder (ADHD) at the beginning of the 2016-2017 school year. *Id*. at ¶8. The School District was advised of Plaintiff's diagnosis. *Id*. at ¶9.

During the 2017-2018 school year while in the Eighth Grade, Plaintiff was a member of the football team. *Id*. at ¶10. Defendant Beltz was the football coach and principal at the School District. *Id*. at ¶6. Plaintiff alleges that after joining the team, he began to suffer hazing and bullying that was brought to the attention of Defendant Beltz. *Id.* In particular, Plaintiff alleges he was the subject of persistent bullying from his teammates including specifically Defendant, Nicholas Collins. *Id.* at ¶19. Plaintiff generally avers that the harassment consisted of calling him names and having rubber bands shot at him. *Id.* at ¶11. The Plaintiff's parents made Defendant Beltz aware of their concerns on multiple occasions. *Id.* at ¶12. Defendant Beltz dismissed the

complaints without an investigation as he believed the actions were just "kids being kids." *Id.* at ¶13. Defendant Beltz did tell the students to stop the bullying and harassing of Plaintiff because his mother had called. *Id.* at ¶14. It is averred that this intervention only exacerbated the situation causing Plaintiff to suffer additional embarrassment, hazing, and bullying. *Id.* at ¶14.

In November 2017, Plaintiff alleges that the hazing and bullying caused Plaintiff's toe to get broken during football practice. *Id.* at ¶15. In December 2017, while in gym class, Plaintiff was hit in the head with a racket causing a concussion. *Id.* at ¶16. In March of 2018, Plaintiff stayed after school to attend a volleyball game. *Id.* at ¶18. He went into the weight room to talk to a friend. *Id.* at ¶19. While talking to his friend, Collins came up behind Plaintiff and put him in a headlock until Plaintiff went unconscious, then dropped Plaintiff to the floor where he hit his head. *Id.* As a result, Plaintiff sustained severe and permanent injuries. *Id.* at ¶20. Despite Plaintiff's parents' repeated notice to the School District including Defendant Beltz, the Defendants did nothing to ensure that Plaintiff was educated without fear for his personal safety. These incidents resulted in permanent injuries to the Plaintiff. *Id.* at ¶21. Plaintiff and his family moved to a new school district in the following school year. *Id* at ¶29.

Plaintiff's Complaint raises 7 different counts against Defendants Beaver Area School District and Beltz. Specifically and as a whole, all of Plaintiff's counts against the Defendants are based on a failure to act and to generally provide a safe environment for Plaintiff to attend school. All of the allegations allege some sort of negligence or breach of an unspecific duty which taken as true, fail to state a claim upon which relief could be granted based on established and controlling case law. Accordingly, Defendants Beaver Area School District and Beltz respectfully move for the dismissal with prejudice of Plaintiff's claims against them in their entirety as more fully discussed herein.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted). *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true, [courts] are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, supra, 129 S. Ct. at 1949-1950 (citations, internal quotation marks, and parentheses omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, supra, 129 S. Ct. at 1950. *See also*, *Fowler*, supra, 578 F.3d at 210-211.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, supra, 129 S. Ct. at 1950. *See also*, *Fowler*, supra, 578 F.3d at 210-211.

## ARGUMENT

**I.     CONTROLLING LAW REQUIRES DISMISSAL OF PLAINTIFF'S SECTION 1983 CLAIMS AT COUNTS I, II, AND V.**

To state a claim under section 1983, a plaintiff must meet two threshold requirements. He must allege: (1) that the alleged misconduct was committed by a person acting under color of state law; and (2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42 (1988). As to allegations against an individual, "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir.1988). *See also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir.2003)(citing *Rode*). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. *Accord Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293–96 (3d Cir.1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir.1995). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs .... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

As to Section 1983 claims against a school district, a plaintiff must allege facts to establish liability as set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See also McGreevy v. Stroup*, 413 F.3d 359, 367–69 (3d Cir.2005) (school district is subject to liability in a Section 1983 action under *Monell*). A school district is not liable under Section 1983 merely for employing someone who violates a person's civil rights; rather, a school district that does not directly violate

a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *Id.*; *see also Mann v. Palmerton Area School Dist.*, 33 F.Supp.3d 530, 540–41 (M.D.Pa. 2014)("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation.") (citation omitted). The plaintiff bears the burden of identifying the policy or custom. *Id*. This rule ensures that a school district will only be liable where it is the "moving force" behind the plaintiff's injury. *Id*. "Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996). "[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Customs are "practices of state officials … so permanent and well settled as to virtually constitute law." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)(citations and quotations omitted).

Here, Plaintiff's Complaint does not allege or articulate *Monell* liability. Plaintiff has not identified any policy, practice or custom that was the moving force behind his alleged injuries. Rather, Plaintiff's Complaint only alleges a failure to act on the part of Beltz and/or the School District in not providing a safe environment at school for the Plaintiff's attendance which does not establish *Monell* liability against the School District. In fact, Plaintiff specifically alleges at Paragraph 41 d. that Defendant Beltz's action was the "but-for" cause of Plaintiff's injuries. Although not pled in these counts, Plaintiff's allegations do not amount to the required deliberate indifference standard. The School District cannot be liable for Defendant Beltz's actions (or inactions) under a *respondeat superior* liability theory as a mater of law. *Rode*, 845 F.2d at 1207–

LEGAL/161083458.v1

5

a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *Id.*; *see also Mann v. Palmerton Area School Dist.*, 33 F.Supp.3d 530, 540–41 (M.D.Pa. 2014)("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation.") (citation omitted). The plaintiff bears the burden of identifying the policy or custom. *Id*. This rule ensures that a school district will only be liable where it is the "moving force" behind the plaintiff's injury. *Id*. "Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996). "[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Customs are "practices of state officials … so permanent and well settled as to virtually constitute law." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)(citations and quotations omitted).

Here, Plaintiff's Complaint does not allege or articulate *Monell* liability. Plaintiff has not identified any policy, practice or custom that was the moving force behind his alleged injuries. Rather, Plaintiff's Complaint only alleges a failure to act on the part of Beltz and/or the School District in not providing a safe environment at school for the Plaintiff's attendance which does not establish *Monell* liability against the School District. In fact, Plaintiff specifically alleges at Paragraph 41 d. that Defendant Beltz's action was the "but-for" cause of Plaintiff's injuries. Although not pled in these counts, Plaintiff's allegations do not amount to the required deliberate indifference standard. The School District cannot be liable for Defendant Beltz's actions (or inactions) under a *respondeat superior* liability theory as a mater of law. *Rode*, 845 F.2d at 1207–

08. As a result, Plaintiff's Section 1983 claims against the Defendant School District are insufficient as a matter of law and should be dismissed.

If the court determines that Plaintiff's Section 1983 claims should not be dismissed on this ground, the Supreme Court of the United States has established that a state's failure to protect an individual from the actions of a private actor does not constitute a violation of the Fourteenth Amendment. *DeShaney v. Winnebago County Dept. of Soc Servs*., 489 U.S. 189, 198-200 (1989). There are two exceptions to this rule, the special relationship exception described in *DeShaney* and an affirmative duty to protect if the state's actions actively causes the harm. *See Kneipp v. Tedder,* 95 F.3d 1199, 1201 (3d Cir.1996). As further discussed below, neither of these exceptions apply to this case, and there is no Fourteenth Amendment violation that can be recoverable under Section 1983. Accordingly, Plaintiff's Section 1983 claims should be dismissed with prejudice.

      A.      **THERE IS NO "SPECIAL RELATIONSHIP" BETWEEN THE PARTIES.**

The United States Supreme Court has previously held that an affirmative duty to protect may arise due to a "special relationship" between the individual and a state actor. *DeShaney v. Winnebago County Dept. of Soc Servs*., 489 U.S. 189, 198-200 (1989). The Third Circuit Court of Appeals limited the scope of a special relationship in *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013). The Third Circuit held that a special relationship does not arise from compulsory school attendance laws. *Id* at 171. They specifically came to this conclusion because Pennsylvania's compulsory school laws do not qualify as state custody for Fourteenth Amendment Purposes. *Id.* The court specifically stated that there was no special relationship, even if the school exercised *in loco parentis* authority over the students. *Id.* Furthermore, the court exercised this judgment regardless of potentially horrific facts, including when the plaintiff suffers from disabilities. *Id.* (citing D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir.1992).

The court specifically noted that, "although we recognized the horrific nature of the allegations, we nevertheless held that 'the school defendants' authority … during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney*.'" *Id.*

*Morrow* involved female twins who were students at the defendant public high school. The twins were consistently bullied by a local juvenile delinquent, including the bully elbowing one of the twins in the throat. The incidents of bullying were reported to the school officials, who informed the twins' parents that they could not remove the bully from the school – despite an order of "no contact" from the Court of Common Pleas of Beaver County – and advised the parents to consider enrolling in another school. The parents enrolled the twins in a different school and filed *Morrow* pursuant to 42 U.S.C. Section 1983, alleging a violation of due process rights under the Fourteenth Amendment. *Id.*

Here, Plaintiff was a student enrolled at the High School of the Beaver Area School District. While at the school, he was a member of the football team. Plaintiff avers that he was the subject of bullying from his teammates, while the coach did not take action to prevent it. This culminated with the Plaintiff leaving the team, with a few other incidents following. The only intervention came when Defendant Beltz asked the teammates to stop bullying the Plaintiff as he had received a complaint regarding the alleged incidents.

Although it is alleged that the School District and Defendant Beltz did not prevent the incidents, they did not have the type of special relationship that was defined in *Deshaney*. Similar to *Morrow*, the school's compulsory attendance laws do not create a special relationship as there is no custody regardless of whether there is *in loco parentis* custody. Like *D.H.*, the school, and its personnel's, *in loco parentis* status is only in place to prevent interference with the educational

process; it does not create any special relationship with its students or impose a duty for the school or its personnel to act.

Moreover, the fact that the Plaintiff required special accommodations as a result of his ADHD does not impact the analysis of whether a special relationship exists. *See Id.* The Third Circuit Court of Appeals has previously rejected similar arguments in *Morrow*, specifically citing the horrific fact pattern of *D.R.*. The Third Circuit Court of Appeals still held that no special relationship existed, regardless of the abhorrent facts. While the facts here allege that the Plaintiff was bullied, no affirmative action or inaction taken by the Defendants rises to the level required by *Deshaney* to create a special relationship. Further, the facts in this case are less horrific than what was described in *Morrow*, where The Third Circuit Court of Appeals held that no special relationship existed. Accordingly, there no special relationship present between the parties.

B.   **THERE IS NO STATE CREATED DANGER.**

For a duty to protect to arise under section 1983, the defendants must create or enhance a dangerous situation. *Kneipp,* 95 F.3d 1199, at 1201. To prevail on a state created danger theory, the plaintiff must prove:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Morrow* 719 F.3d 160 at 177 (citations omitted). The Third Circuit Court of Appeals in *Morrow* explained that there must be an affirmative act to create liability instead of mere inaction. *Id.* In

the case of school bullying, disciplining a student or failing to prevent a student from bullying another does not rise to the required level of an affirmative act. To rise to a level of an affirmative act, the school or its personnel must drastically change its status quo and render the student more vulnerable to danger than if the school or its personnel did not act at all. *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235 (3d Cir. 2016).

As previously stated, *Morrow* involved twins who were bullied by a juvenile delinquent. The delinquent followed the twins onto their bus and harassed them, culminating with the delinquent elbowing one of the twins in her throat. The Third Circuit Court of Appeals found that there was no affirmative act by the school in allowing the delinquent student to board the twins' bus. *See Morrow* 719 F.3d 160. The Third Circuit Court of Appeals noted that there was mere inaction, which does not rise to the requisite level of state created danger. *Id. L.R.* involved far more egregious action from a teacher. In *L.R.*, a Kindergarten teacher released a five year old child to an unidentified adult. The adult proceeded to sexually assault the child. The Third Circuit Court of Appeals found that there was state action as the kindergarten teacher deliberately allowed the child to leave the school with an unidentified adult, which obviously put her in harm's way. This was classified as an action as it drastically changed the status quo as children in kindergarten are typically closely monitored by the teacher. This is specifically distinguished from *Morrow*, as the school solely maintained the status quo, even if they failed to act on a potentially dangerous situation and even if their inaction was against school policy. *Id.* This parallels *Deshaney* as the "maintenance of the status quo was insufficient to create liability." *Id.* at 244.

Here, the facts are similar – but not quite as egregious – as the ones presented in *Morrow*. The Plaintiff was bullied by other students, including his former teammates. The Plaintiff avers that he suffered an injury during football practice, but does not state how it was caused by the

bullying or whether it was the type of injury that one may reasonably expect when engaging in a violent sport, such as football.  The Plaintiff further avers that he suffered various other injuries as a result of the bullying.  The Plaintiff's parents complained to the Defendant School District, and specifically allege in Paragraph 17 of the Complaint that the School District did not take any action to prevent the bullying.  As stated above, there was no special relationship, nor was there any action that shocks the conscience.

This inaction follows the facts of *Morrow*, as the inaction of allowing the students into the weight room is not an affirmative act by the school or its personnel.  This case is distinct from *L.R.* as the teacher did not take any action to disrupt the typical status quo.  The school and its personnel failed to take any action to stop the bullying, outside of Defendant Beltz asking the other students to stop bullying the Plaintiff.  Although this inaction was alleged to be against school policy, it is similar to *Morrow* as it is maintaining the status quo.  Furthermore, the School and its personnel's failure to act on the situation does not come close to the requisite level for an overt act that is described in *L.R.*, as high school students have more autonomy and are not as closely monitored as children in kindergarten.  Even though Plaintiff avers that Defendant Beltz exacerbated the situation by telling the other students to stop bullying the Plaintiff, this does not rise to the level of putting the student in harm's way that The Third Circuit Court of Appeals follows in *L.R.*.  Accordingly, the School's alleged inaction in failing to protect the Plaintiff from the alleged harassment and bullying by other students does not result in a state created danger and the claim should be dismissed with prejudice.

Furthermore, Defendant Beltz's actions or inactions do not give rise to the level required to create a state created danger in his official or individual capacity.  As stated above, an affirmative action is required to create a state created danger.  *See Morrow, supra* and *L.R., supra*.

Here, Plaintiff is alleging negligence on the part of Defendant Beltz for his failure to act to prevent a third party from bullying the Plaintiff. This omission to act does not meet the standard required for a state created danger as there was no affirmative act. As for the action of asking the other students to stop bullying the Plaintiff, this act does not rise to the level required by *L.R.* as it does not disrupt the typical status quo or obviously place the Plaintiff in a greater risk for harm. In fact, the expected outcome of the act would be for the other students to act in accordance with the request of a faculty member, which does not exasperate or worsen the position of the Plaintiff; it is expected to put the Plaintiff in a better position than he would otherwise be in.

Finally, Defendant Beltz was solely acting pursuant to his duties as principal and is afforded qualified immunity. A principal of a school – like other government officials – is generally provided qualified immunity unless a right is clearly established by the plaintiff. *Sutton v. Rasheed*, 323 F.3d 236, (3d Cir. 2003). Before a right can be clearly established, "[t]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was 'clearly established.'" *Id.* at 258; *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Here, Plaintiff's allegations do not provide that required definition. At no point did Defendant Beltz act outside the veil of his duties, which would compromise this immunity. Accordingly, Defendant Beltz should be afforded qualified immunity on Plaintiff's claims.

## C. DEFENDANT BELTZ'S ACTIONS OR OMISSIONS DO NOT VIOLATE ANY RIGHTS PROVIDED BY THE EQUAL PROTECTION CLAUSE.

Plaintiff avers in Count I of the Complaint that Defendant Beltz's failure to act violates Plaintiff's rights afforded under the Equal Protection Clause of the Fourteenth Amendment. As an initial matter, *Iqbal* requires that a claim be pled to sufficiently provide notice to the Defendant of his alleged wrongdoing, which has not occurred here.

The Equal Protection Clause states that all similarly situated persons must be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, (1985). Suspect classifications such as race, national origin, and gender can give rise to heightened scrutiny. *Id.* To survive equal protection review, non-suspect classes must prove that legislation is not rationally related to a legitimate government interest.

Here, Plaintiff fails to plead any fact that plausibly states a violation of the Equal Protection Clause. Plaintiff has not made any averments that he is part of a suspect class. Moreover, Plaintiff has failed to plead any facts that he was treated differently from other students. In fact, the Complaint's sole allegation is that Defendant Beltz omitted to act to prevent the bullying, beyond asking other students to stop. These facts do not plausibly suggest that Plaintiff's equal protection rights have been violated. Accordingly, Count I should be dismissed with prejudice.

Even if this court finds that rights have been violated, Defendant Beltz is afforded qualified immunity. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, (1985). As stated above, there is no fact to suggest that a right alleged to have been violated is clearly established. Accordingly, Defendant Beltz is afforded qualified immunity based on the bare allegations as they stand.

### D. CONTROLLING LAW PREVENTS PLAINTIFF FROM UTILIZING A SECTION 1983 CLAIM TO ENFORCE A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT.

The Third Circuit Court of Appeals has previously held that Section 1983 is not the appropriate vehicle to address the Americans with Disabilities Act ("ADA"). *Williams v. Pennsylvania Hum. Rels. Comm'n*, 870 F.3d 294 (3d Cir. 2017). The court in *Williams* specifically stated that "plaintiffs may not seek damages under Section 1983 for stand-alone violations of ... the ADA." *Id.* at 297. Section 1983 provides a method for recourse under federal law; it does not

confer any rights. *Id.* If there is an available statutory remedy, Section 1983 will not apply. *Id.* The ADA allows for lawsuits to be filed pursuant to any alleged violation.

Here, Plaintiff improperly attempts to bring a claim pursuant to Section 1983 as a result of a cause of action under the ADA. Plaintiff attempts to make this claim due to his ADHD, which he asserts is known by the School. Regardless of whether the Plaintiff has a valid claim under the ADA, the ADA provides a cause of action. Similar to *Williams*, Plaintiff is barred from bringing a claim under Section 1983 as there is an available statutory remedy under the ADA. Accordingly, a Section 1983 claim is not the appropriate vehicle to provide relief and this claim at Count V of Plaintiff's Complaint should be dismissed with prejudice.

**II.      PLAINTIFF DOES NOT HAVE A CLAIM FOR INTENTIONAL DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT OR IN THE ALTERNATIVE, DEFENDANTS MOVE FOR A MORE DEFINITE STATEMENT REGARDING PLAINTIFF'S ALLEGATIONS IN COUNT IV.**

A disability under the ADA is, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(1). Title II of the ADA applies to state and local government agencies, including public schools. ADA §3.1. To comply with the ADA, a school district must adhere to the following: (1) they are prohibited from denying the disabled person the right to participate in an activity solely due to the disability; (2) They must provide services in an integrated setting; (3) they must eliminate any unnecessary eligibility standards or rules; (4) they must make reasonable modifications to afford equal access to disabled individuals; (5) They must provide aids and services to ensure effective communication; (6); they must not assess charges on individuals to cover costs of nondiscriminatory treatment; and (7) they must operate programs so they are accessible and usable by individuals with disabilities. ADA §3.2. Individuals qualify for the protections prescribed by the ADA when they meet the essential

eligibility requirements. These requirements change depending on the activity. ADA §3.3. An individual is considered disabled if they are substantially impaired with respect to a major life activity. In pertinent part, certain learning disabilities or emotional illness *may* be covered ADA §1.9 (emphasis added).

Here, Plaintiff asserts that the Defendants intentionally discriminated against him as a result of his disabilities. Specifically, Plaintiff avers in Paragraph 53 that Defendants had a duty of care under unspecified sections of the ADA to appropriately supervise and educate the Plaintiff, but Plaintiff neglects to provide the details as to how the Defendants actions violated the ADA other than a failure to act. Defendants assume that the Plaintiff is referring to Section 2 of the ADA. However, no fact averred in the complaint can plausibly suggest any violation of this section or that there was intentional discrimination. Instead, the Plaintiff merely alleges that the Defendants failed to act – an act of mere negligence – which does not rise to the necessary standard for intentional discrimination required under the ADA. There is nothing in Plaintiff's Complaint to suggest that the Defendants intentionally discriminated against the Plaintiff as a result of his disabilities.

In the alternative, Rule 12(e) of the Federal Rules of Civil Procedure state that a party is entitled to a more definite statement if a count is so vague that the defendant cannot reasonably prepare a response. Although Plaintiff alleges violations under the ADA in Count IV of the Complaint, it is overly vague and not entirely clear that it applies in the context alleged. Defendants assume that the Plaintiff is referring to Titles 2 and 3 of the ADA as they address claims against public schools. As stated above, Plaintiff has pled no fact that allege any affirmative action on behalf of the School District or Defendant Beltz that rises to the level of intentional discrimination; the Defendants merely omitted to act, which would not rise to the standard required for intentional

discrimination under the ADA. After an exhaustive search, Defendants have not found any case law or instances where this type of duty has been imposed on a school district or its employees in this context under the ADA. As a result, Defendants cannot reasonably prepare a response to this Count. Accordingly, Defendants respectfully move for a more definite statement.

**III.   THERE IS NO CLAIM FOR BREACH OF A FIDUCIARY DUTY AS A RESULT OF DEFENDANTS' ALLEGED INACTION OR IN THE ALTERNATIVE, DEFENDANTS MOVE FOR A MORE DEFINITE STATEMENT REGARDING PLAINTIFF'S ALLEGATIONS IN COUNT VI.**

As stated above, *Iqbal* requires a claim to be plead with specificity to put a prospective defendant on notice. The Complaint herein does not provide plausible facts to suggest that any fiduciary duty exists between the parties. Moreover, there is nothing in the factual background to suggest that any fiduciary duty was owed to the Plaintiff, and that any applicable duty has been breached as a result of the Defendants' action or inaction. To prevail on a breach of fiduciary duty theory, the Plaintiff must prove: (1) the existence of a fiduciary relationship, (2) a negligent or intentional failure to act in good faith, and (3) an injury suffered as a result of the breach. *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20 (Pa. Super. 2020).

Plaintiff avers in Paragraph 75 that Defendants had a duty under "Pennsylvania and Federal statutes and regulations" to appropriately supervise and educate the Plaintiff, but neglect to provide the statutes and regulations that they allege the Defendants are running afoul of. After an extensive search, Defendants are unaware of any precedent or case law that suggests that a fiduciary duty exists in this context or that the omission to act by a school or its agents can give rise to a breach of a fiduciary duty. Further, Plaintiff has not asserted any fact to suggest that they clearly suffered injuries as a result of any alleged breach of fiduciary duty beyond vague statements. As a result, the Plaintiff cannot prevail on a breach of fiduciary duty theory on his alleged facts.

To the extent Plaintiff may be referring to the duty to protect a student as they exercise *in loco parentis* control, the Third Circuit Court of Appeals has held that a school does not have a duty to protect a student from the actions of others absent a special relationship or state created danger. *Morrow 719 F.3d 160.* This is the case regardless of in *loco parentis* status and compulsory attendance laws. *Id.* The Supreme Court states that the language of the Constitution cannot impose an affirmative obligation on the school to ensure harm does not come from third parties. *Id.* (*citing DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197,(1989)).

Here, regardless of whether the School was exercising *in loco parentis* control over the Plaintiff, there is no affirmative duty to protect. As stated above, there is no special relationship between the Parties and there is no state created danger. The School did not take any action that put the Plaintiff in harm's way. Although Plaintiff was allegedly the subject of bullying from other students, the only action that the School or its personnel took was to tell the other students to stop. Similar to *Morrow*, they did not owe a duty to protect or any other duty to the Plaintiff as the Constitution does not impose any such duty on a school. Accordingly, the claim for breach of fiduciary duty should be dismissed with prejudice.

In the alternative, Rule 12(e) of the Federal Rules of Civil Procedure state that a party is entitled to a more definite statement if a count is so vague that the defendant cannot reasonably prepare a response. Although Plaintiff alleges a breach of fiduciary duty, it is overly vague and not entirely clear that it applies in this context. After an exhaustive search, Defendants have not found any case law or instances where this type of duty has been imposed on a school district or its employees in this context. Additionally, Plaintiff's mention of Federal and Pennsylvania laws and regulations in Paragraph 75 is vague and ambiguous, with no clear notice of which laws and

regulations that Defendants are in violation of. As a result, Defendants cannot reasonably prepare a response to this count. Accordingly, Defendants respectfully request a more definite statement.

### IV. PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS BARRED BY THE PENNSYLVANIA STATE TORT CLAIMS ACT.

To support a claim for Negligent Infliction of Emotional Distress, there must be a duty of care, and "the breach of this implied duty to care for the plaintiff's emotional well-being must result in severe emotional distress." *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83 (Pa. 2011). This implied duty is determined by weighing the following factors: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk and foreseeability of the harm; (4) the consequences of imposing the duty on the actor; and (5) the public interest of the proposed solution. *Id.* (internal citation omitted). Further, a plaintiff averring an emotional distress claim must demonstrate damages resulting from the alleged emotional distress. *Id.*

Governments and their agencies are generally immune from state tort claims and in particular claims of negligence. In order to overcome governmental immunity to recover damages for injury to persons or property, a plaintiff bears the burden of proof and must establish that his or her cause of action arises from negligent acts of the local agency or one of its employees, that the cause of action is one for damages to person or property that is recognized at common law, and that the cause of action falls within one of the nine (9) enumerated exceptions set forth in Section 8542(b) of the Pennsylvania State Tort Claims Act ("PSTCA"). *See* 42 Pa. C.S.A. §8542(a), (b). None of the nine exceptions are pertinent to this case.

Here, any claims sounding in negligence against the School District or Defendant Beltz, would be barred by the PSTCA and do not fit into any of the enumerated exceptions. Even if Defendants Beltz and the School District were found to be negligent, the factors present in *Toney* suggest that they are not the type of relationship that would impose harm. As previously

mentioned, there is no special relationship between the parties. Additionally, it is not in the public's best interest to create a special relationship, as doing so in this circumstance would subject all school districts to this type of scrutiny for their actions. Plaintiff argues that there was extreme and reckless conduct on the part of the Defendants, but as previously mentioned Defendants Beltz and the School District did not take any action, beyond telling the other students to stop bullying the Plaintiff. This does not rise to the level of recklessness or actual malice as defined in well established case law. Accordingly, the Plaintiff's claim for Negligent Infliction of Emotional Distress is barred against the School District and any of its personnel, including Defendant Beltz, and this claim should be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, Defendants Beaver Area School District and Jeffery Beltz respectfully request that this Honorable Court grant their Motion to Dismiss pursuant to Rule 12(b)(6) and dismiss all claims against these Defendants in the Plaintiff's Complaint with prejudice. In the alternative, Defendants are entitled to a more definite statement as to which the of the Defendants' actions violated the laws alleged.

Respectfully submitted,

**MARSHALL DENNEHEY**

BY:    s/ *Teresa O. Sirianni*
TERESA O. SIRIANNI, ESQUIRE
PA ID #90472
**Counsel for Defendants, Beaver Area School District and Jeffrey Beltz**
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
(412) 803-1140
(412) 803-1188/fax
tosirianni@mdwcg.com