IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHYLER DRUMM,                                )
                                             )
          Plaintiff,                         )     Civil Action No. 24-0438
                                             )
          v.                                 )     District Judge Cathy Bissoon
                                             )     Magistrate Judge Maureen P. Kelly
BEAVER AREA SCHOOL DISTRICT;                 )
JEFFERY BELTZ; and NICHOLAS                  )     Re: ECF No. 8
COLLINS,                                     )
                                             )
          Defendants.

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

Pending before the Court is a Motion to Dismiss, ECF No. 8, filed by Defendants Beaver Area School District (the "School District"), and Jeffrey Beltz ("Beltz") (collectively, the "Moving Defendants"), requesting that Counts I, II, IV, V, VI, and VII of the Complaint, ECF No. 1-8, filed by Plaintiff Shyler Drumm ("Drumm"), be dismissed with prejudice.[1]

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss be granted.

### II.   REPORT

#### A.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Drumm was enrolled in the Defendant School District when he was diagnosed with Generalized Anxiety Disorder and Attention Deficit Hyperactivity Disorder ("ADHD") at the beginning of the 2016-2017 school year. ECF No. 1-8. ¶¶ 2, 8. The School District was advised of Drumm's diagnosis and his need for accommodations. Id. ¶ 9.

---

[1] In the alternative, as to Counts IV and VI, the Moving Defendants move for a more definitive statement. ECF No. 8 ¶¶ 8, 9.

During the 2017-2018 school year while in the eighth grade, Drumm joined the football team. Id. ¶ 10. Defendant Beltz was the football coach and a principal in the School District. Id. ¶ 6.

After joining the football team, Drumm began to suffer hazing and bullying. Id. ¶ 10. The harassment generally consisted of calling Drumm names, including "Shytard" and "mama cry baby," and having rubber bands shot at him. Id. ¶ 11. Drumm's parents made Beltz aware of the bullying on multiple occasions. Id. ¶ 12. Beltz dismissed the complaints as "kids being kids" and did not perform an investigation. Id. ¶ 13. Beltz told the students to stop bullying and harassing Drumm, because his mother had called, however, this action only exacerbated the situation, causing him to suffer additional embarrassment, hazing, and bullying. Id. ¶ 14.

In November 2017, as a result of the escalated hazing and bullying, Drumm suffered a broken toe during football practice. Id. ¶ 15. In December 2017, a student hit Drumm on the head with a racket during gym class, causing a concussion. Id. ¶ 16. Again, Drumm's parents brought their concerns regarding the bullying to Beltz's attention, but no action was taken by the School District. Id. ¶ 17.

On March 5, 2018, Drumm stayed after school to attend a School District volleyball game. Id. ¶ 18. He went into the weight room to talk to a friend. Id. ¶ 19. While talking to his friend, Defendant Nicholas Collins ("Collins") came up behind Drumm and put him in a headlock until he lost consciousness. Id. Collins then dropped Drumm to the floor, where he hit his head. Id. As a result, Drumm sustained severe and permanent injuries, including a concussion, post-traumatic stress disorder, a closed head injury, and cervical and lumbar spine injuries. Id. at ¶¶ 20, 87. Drumm and his family moved to a new school district for the following school year. Id. at ¶ 29.

On December 19, 2023, Drumm filed a Complaint in the Court of Common Pleas of Beaver County, Pennsylvania. ECF No. 1-8. On March 22, 2024, the Moving Defendants filed a Notice of Removal. ECF No. 1.

In the Complaint, Drumm asserts seven claims. Six claims are brought against the Moving Defendants arising out of the aforementioned events. The Counts are summarized in the below chart.

| Count | Claim | Defendant(s) | Allegations |
|-------|-------|--------------|-------------|
| I | Section 1983 – Equal Protection | Beltz | Deprived Drumm of his procedural and substantive due process rights in failing to investigate allegations of bullying and harassment. ECF No. 1-8 ¶¶ 30-38. |
| II | Section 1983 – State Created Danger | School District and Beltz | Caused a state-created danger by having an awareness of the bullying and harassment of Drumm, but disregarding this danger, thereby causing Drumm's injuries. ECF No. 1-8 ¶¶ 39-46. |
| III | Negligence | Collins | Injured Drumm by acting recklessly and negligently. ECF No. 1-8 ¶¶ 47-49. |
| IV | Intentional Discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* | School District and Beltz | Discriminated against Drumm by failing to provide him with a safe and properly supervised education and acting with deliberate indifference. ECF No. 1-8 ¶¶ 50-62. |
| V | Section 1983 – Enforcement of ADA | School District and Beltz | Discriminated against Drumm by denying him the right to a safe education free from discriminatory treatment. ECF No. 1-8 ¶¶ 63-72. |
| VI | Breach of Fiduciary Duty | School District and Beltz | Breached their fiduciary duty to Drumm by failing to appropriately supervise and educate Drumm, thereby causing his injuries. ECF No. 1-8 ¶¶ 73-79. |

| Count | Claim | Defendant(s) | Allegations |
|-------|-------|--------------|-------------|
| VII | Negligent Infliction of Emotional Distress | School District, Beltz and Collins | Acting so outrageously and with malice, thereby inflicting severe emotional distress. ECF No. 1-8 ¶¶ 80-83.[2] |

The Moving Defendants filed a Motion to Dismiss and brief in support on May 31, 2024. ECF Nos. 8 and 9. Plaintiff filed a Response in Opposition and brief in support on July 2, 2024. ECF Nos. 13 and 14. The Moving Defendants filed a Reply on July 16, 2024. ECF No. 16.

The Motion to Dismiss is now ripe for consideration.

**B.    STANDARD OF REVIEW**

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." "[D]etailed pleading is not generally required." Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016). Rather, the rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

In assessing the sufficiency of a complaint, the court must accept as true all material allegations in the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. Chubb

---

[2] The Complaint contains a second Count VII, ECF No. 1-8 ¶¶ 84-92, but those paragraphs only relate to Drumm's averment of damages and do not allege an additional cause of action.

Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555. Thus, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice. The complaint therefore "must allege facts suggestive of [the proscribed] conduct" that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s of his claim]."). Id. at 233-34.

## C.    DISCUSSION

### 1.    Section 1983 Claims

Drumm asserts three claims based on Section 1983. ECF No. 1-8 ¶¶ 30-46, 63-72. The Moving Defendants seek the dismissal of all three claims. ECF No. 8 ¶ 7.

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." Pappas v. City of Lebanon, 331 F.

Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).

At the outset, it is noted that the Moving Defendants argue that as to any Section 1983 claim against the School District, Drumm failed to allege facts to establish liability under Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978). ECF No. 9 at 4. They point out that Drumm failed to identify any policy, practice, or custom that was a moving force behind his injuries. Id. at 5. In response, Drumm stipulated that he is not asserting a Monell claim or a "special relationship" exception. ECF No. 14 at 4.

### a.    Section 1983, Equal Protection – Count I

In Count I of the Complaint, Drumm brings an equal protection claim against Beltz, in his individual and official capacity. In the Motion to Dismiss, the Moving Defendants argue that Drumm fails to state an equal protection claim. ECF No. 9 at 11-12. In the Response Brief, Drumm states he is "not seeking a claim against Beltz under the Equal Protection Clause and stipulates to striking paragraph 31 of his Complaint." ECF No. 14 at 11. Accordingly, it is recommended that the Motion to Dismiss as to Count I against the Moving Defendants be granted.

### b.    Section 1983, State Created Danger – Count II

In the Motion to Dismiss, the Moving Defendants argue that Drumm has not pleaded that Beltz took any affirmative action sufficient to cause a state created danger. ECF No. 9 at 8-9. Beltz also argues that he should be entitled to qualified immunity, because he was acting pursuant to his duties as principal. Id. at 11.

In opposition, Drumm responds that Beltz acted with deliberate indifference and used his authority to create a dangerous situation, which made Drumm vulnerable to harm. ECF No. 14 at

8. He argues that the averred conduct by the Moving Defendants over a period of six months "shocks the conscience." Id. at 7.

In the Reply, the Moving Defendants reassert that the alleged actions at issue are not affirmative acts that created a danger. ECF No. 16 at 1-3.

For a duty to protect to arise under Section 1983, the defendants must create or increase the risk of harm to a plaintiff. Kneipp v. Tedder, 95 F.3d 1199, 1201 (3d Cir. 1996). To prevail on a state created danger theory, a plaintiff must prove:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013), as amended (June 14, 2013) (internal citations omitted). Further, there must be an affirmative act to create liability instead of passive inaction. Id. "That requirement ensures that defendants are only liable for misuse of state authority, rather than a failure to use it." Gayemen v. Sch. Dist. of City of Allentown, 712 F. App'x 218, 220 (3d Cir. 2017) (internal quotations omitted).

"The Third Circuit instructs that, when determining whether a state actor committed an affirmative act, a court should first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo." Lansberry v. Altoona Area Sch. Dist., 318 F. Supp. 3d 739, 755 (W.D. Pa. 2018) (internal quotations omitted).

In <u>Morrow</u>, the United States Court of Appeals for the Third Circuit held that a school's choice to suspend a bully, rather than expel him as required by school policy, and then allow that bully to board the victims' school bus despite a no-contact order, was a failure to act, rather than an affirmative act. <u>Morrow</u>, 719 F.3d at 164. Drumm argues that <u>Morrow</u> is inapposite to the instant case, because Beltz affirmatively informed Drumm's bullies that Drumm's mother called and complained, ECF No. 14 at 8, whereas in <u>Morrow</u>, the school failed expel a bully, which is an inaction. <u>Morrow</u>, 719 F.3d at 178.

The Court does not find this argument convincing. The Third Circuit has instructed that there must be a "drastic change" to the status quo for a state action to meet the threshold of an "affirmative act" – not merely the "maintenance of a situation that was already dangerous." <u>L.R. v. Sch. Dist. of Philadelphia</u>, 836 F.3d 235, 244 (3d Cir. 2016). To qualify as an affirmative act, Beltz's act of informing Drumm's bullies that Drumm's mother called would have had to "created or increase the risk of harm itself." <u>Id.</u> While the Court agrees with Drumm that such a statement would not have helped his situation, it did not precipitate a "drastic change" in the status quo. Drumm's bullying may have increased, but such escalation is not a "drastic change."

The Court also notes that Beltz argues that he should be entitled to qualified immunity as to this claim. ECF No. 9 at 11.

> To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the official's conduct. . . . [T]he sufficiency of [plaintiff's] pleading is both "inextricably intertwined with" and "directly implicated by" [defendant's] qualified immunity defense.

<u>L.R.</u>, 836 F.3d at 241. Because the Court has concluded that Drumm has failed to state a claim as to Count II, the Court will not opine on whether qualified immunity may or may not apply, because such analysis may be dependent on the sufficiency of Drumm's pleading.

8

Accordingly, it is recommended that the Motion to Dismiss relative to the Section 1983 state created danger claim in Count II against the Moving Defendants be granted, but with leave to amend.

### c.    Section 1983, Enforcement of the ADA – Count V

In Count V of the Complaint, Drumm brings an ADA claim pursuant Section 1983. ECF No. 1-8 ¶¶ 63-72.

The Moving Defendants argue that controlling law prevents Drumm from utilizing Section 1983 to enforce a violation of the ADA. ECF No. 9 at 12-13.

In his Response, Drumm argues that the recent United States Supreme Court decision of Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S. Ct. 1444 (2023) allows him to raise a Section 1983 claim to enforce the ADA. ECF No. 14 at 11.[3] Specifically, Drumm argues that the decision in Talevski expanded the use of Section 1983. Id.

The Moving Defendants reply that Talevski does not impact whether an ADA claim can be brought under Section 1983. ECF No. 16 at 4. They further argue that the ADA has its own method of enforcement and Section 1983 is not the appropriate vehicle to enforce Drumm's ADA claim. Id. at 5.

In Talevski, the United States Supreme Court held that "federal statutes have the potential to create § 1983-enforceable rights . . . only when the statute unambiguously confers those rights." Talevski, 143 S. Ct. at 1446. In doing so, the Supreme Court relied on the 2002 case of Gonzaga, 536 U.S., which set "forth the Court's established method for ascertaining unambiguous conferral. Courts must employ traditional tools of statutory construction to assess

---

[3] In his Response, Drumm states that "[t]wo recent decision of the United States Supreme Court permit the Plaintiff to raise a Section 1983 claim to enforce the ADA." ECF No. 14 at 11. Upon review of the Response, the Court notes that Talevski is the only "recent" Supreme Court decision Drumm relies on for this argument.

9

whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." <u>Talevski</u>, 143 S. Ct. at 1446 (quoting <u>Gonzaga</u>, 536 U.S. at 283, 285-286).

> Even if a statutory provision unambiguously secures rights, a defendant "may defeat [the] presumption by demonstrating that Congress did not intend" that § 1983 be available to enforce those rights. <u>Rancho Palos Verdes v. Abrams</u>, 544 U.S. 113, 120, 125 S.Ct. 1453, 161 L.Ed.2d 316. Evidence of such intent may be found expressly in the statute creating the right, or implicitly, by creating "a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983,'" <u>ibid</u>.

<u>Id.</u>

While Drumm argues that <u>Talevski</u> created an entirely new scheme for analyzing whether Section 1983 may be used to bring a claim, the Court disagrees. The Court reads <u>Talevski</u> as the Supreme Court merely examining and illuminating its prior precedent – not establishing a new regime. <u>See</u> <u>Planned Parenthood S. Atl. v. Kerr</u>, 95 F.4th 152, 155 (4th Cir. 2024) ("While <u>Talevski</u> offered an illuminating analysis of the issue before us and a useful new example of provisions enforceable via § 1983, we do not read it as toppling the existing doctrinal regime."). Indeed, nothing in <u>Talevski</u> indicates the Supreme Court intended to alter precedent.

The United States District Court for the Eastern District of Pennsylvania previously analyzed whether Section 1983 may be used to pursue a violation of the ADA, and concluded the answer was no.

> [T]he courts have not been able to reach a consensus on whether the ADA's enforcement scheme is so comprehensive that it evidences Congress's intent to foreclose § 1983 actions. Nonetheless, the Court finds that the ADA's enforcement scheme precludes litigants from also seeking remedies under § 1983. The statutory scheme of the ADA is clearly comprehensive; allowing plaintiffs to sue under § 1983 would not add anything to their substantive rights, other than allowing them to obtain attorney's fees and circumvent the statute's administrative procedures by proceeding directly to federal court. <u>Holbrook v. City of Alpharetta</u>, 112 F.3d 1522, 1531 (11th Cir. 1997). The argument that the statute is not comprehensive without its administrative regulations misses the

mark, as the regulations are anticipated and enabled by the statute itself. But see Ransom v. Arizona Bd. of Regents, 983 F.Supp. 895, 904 (D. Ariz. 1997). Second, the ADA contains no savings clause that would allow § 1983 claims despite an otherwise comprehensive statutory scheme. The Court therefore finds that plaintiffs may not bring § 1983 actions for violations of the ADA

Wesley v. Vaughn, No. 99-1228, 2001 WL 210285, at *4 (E.D. Pa. Feb. 28, 2001).

The Court finds this reasoning persuasive and agrees with the Eastern District of Pennsylvania. Pursuant to Talevski, the ADA's "comprehensive statutory scheme" permitting private rights of action is incompatible with individual enforcement under § 1983. Talevski, 599 U.S. at 143. See also Mi Familia Vota v. Fontes, 719 F. Supp. 3d 929, 993 (D. Ariz. 2024), judgment entered, No. 22-509, 2024 WL 2244338 (D. Ariz. May 2, 2024) (using a Talevski analysis and holding that "several private enforcement options that are characteristic of statutory remedies [are] incompatible with § 1983.") (internal quotations omitted). Such an alternative private right of action is exemplified by Count IV of the Complaint in the instant case, which is an intentional discrimination claim under the ADA. Drumm is using the ADA's already available comprehensive statutory scheme to bring Count VI pursuant to the ADA.

Accordingly, it is recommended that the Motion to Dismiss as to Count V against the Moving Defendants be granted.

### 2.    Discrimination under the ADA – Count IV

Drumm pleads that he experienced intentional discrimination under the ADA. ECF No. 1-8 ¶¶ 50-62. The Moving Defendants owed a duty of care to provide Drumm with a properly supervised education free from physical or mental harm, and they breached that duty. Id. ¶¶ 53, 55. Drumm claims that the Moving Defendants also demonstrated deliberate indifference to Drumm's rights under the ADA and deprived Drumm of the benefits of his educational program. Id. ¶¶ 58, 59.

In the Motion to Dismiss, the Moving Defendants argue that Drumm has not alleged facts to indicate intentional discrimination. ECF No. 9 at 14. At most, he alleges mere negligence, which does not rise to the intentional discrimination standard. Id.

Drumm responds that he was subject to harassment and bullying because of his learning disabilities, which establishes a claim pursuant to the ADA. ECF No. 14 at 16-17.

In their Reply, the Moving Defendants argue that are no facts alleged in the Complaint that they violated the ADA or intentionally discriminated against Drumm as a result of his disabilities. ECF No. 16 at 5-6.

The ADA prohibits discrimination against individuals with disabilities. 42 U.S.C. § 12132; Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). In the school context, a plaintiff alleging violations of the ADA must show that he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." Chambers, 587 F.3d at 189.

Additionally, if a plaintiff seeks compensatory damages for an ADA violation, the plaintiff must also show that the discriminatory conduct was intentional. S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 262 (3d Cir. 2013). In order to establish intentional discrimination, the plaintiff must plead facts showing "at least deliberate indifference." Haberle v. Troxell, 885 F.3d 170, 181 (3d Cir. 2018). To plead deliberate indifference, the plaintiff must first allege that the defendant school district had "knowledge that a federally protected right is substantially likely to be violated." S.H., 729 F.3d at 265; Haberle, 885 F.3d at 181. Such knowledge must be actual, as "allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." S.H., 729 F.3d at 266 n.26. Second, the plaintiff must allege that the

defendant "fail[ed] to act despite that knowledge." Id. at 265; Haberle, 885 F.3d at 181. The failure to act in the face of the requisite knowledge must be "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or animosity toward the disabled person." S.H., 729 F.3d at 263 (internal quotations omitted); D.C. v. Pittsburgh Pub. Sch., 415 F. Supp. 3d 636, 657 (W.D. Pa. 2019).

Drumm has not pleaded facts that establish disability discrimination under the ADA. At best, Beltz's actions and inactions may indicate a callousness towards Drumm's needs. But no facts alleged in the Complaint indicate that Beltz or the School District were deliberately indifferent to Drumm's situation or knew that Drumm's rights under the ADA were violated. In fact, as alleged, Beltz admonished Drumm's bullies to stop their harassment – even if he could have done so in a more effective manner.

Accordingly, it is recommended that the Motion to Dismiss as to Count IV, the ADA disability claim, against the Moving Defendants be granted, but with leave to amend.

### 3.    Breach of Fiduciary Duty – Count VI

In Count VI, Drumm asserts a breach of fiduciary duty claim against the School District and Beltz. In the Motion to Dismiss, the Moving Defendants argue that the Complaint does not allege facts that establish a fiduciary duty existed between the parties. ECF No. 9 at 15-16. In the Response Brief, Drumm stipulates to the dismissal of this claim. ECF No. 14 at 17. Accordingly, it is recommended that the Motion to Dismiss as to Count VI against the Moving Defendants be granted.

### 4.    Negligent Infliction of Emotional Distress – Count VII

In Count VII, Drumm alleges a negligent infliction of emotional distress claim against the School District, Beltz, and Collins. In the Motion to Dismiss, the Moving Defendants argue that

any negligence claim against them would be barred by the Pennsylvania State Tort Claims Act. ECF No. 9 at 17-18. In the Response Brief, Drumm stipulates to the dismissal of this claim as to the School District and Beltz only. ECF No. 14 at 17. Accordingly, it is recommended that the Motion to Dismiss as to this claim against the Moving Defendants be granted.

### D.    CONCLUSION

For the reasons set forth herein, it is respectfully recommended that Motion to Dismiss filed by Defendants Beltz and the School District, ECF No. 8, be granted without prejudice as to Counts II and IV and with prejudice as to Counts I, V, VI, and VII.

However, the United States Court of Appeals for the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Here, Drumm may be in possession of additional facts to support his allegations. Therefore, it is recommended that Drumm be afforded an opportunity to file an Amended Complaint to correct the substantial pleading deficiencies identified in this Report. The Court should further instruct Drumm that an Amended Complaint must be filed within thirty days, must fully allege every claim he wishes to pursue against all parties, and must be a pleading that stands by itself without reference to the original or amended complaint. Young v. Minnick, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to

appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: November 14, 2024                   Respectfully submitted,

                                           MAUREEN P. KELLY
                                           UNITED STATES MAGISTRATE JUDGE

cc:      Honorable Cathy Bissoon
         United States District Judge

         All counsel of record via CM/ECF